## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JUSTIN FOWLER, and all others similarly situated,<br><br>      Plaintiff,<br><br>         v.<br><br>MEDICINE MAN TECHNOLOGIES, INC. d/b/a/ SCHWAZZE, et al.,<br><br>      Defendants. | Civil Action No. 1:23-cv-00640-WJ-SCY |

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF FLSA AND CLASS ACTION SETTLEMENT

### I.    INTRODUCTION

Plaintiff Justin Fowler, *et al*. and Defendants Medicine Man Technologies, Inc. d/b/a Schwazze, Schwazze New Mexico, LLC, and R. Greenleaf Organics, Inc. ("Defendants") (collectively, "the Parties"), by and through the undersigned counsel, hereby submit this Joint Motion for Preliminary Approval of FLSA and Class Action Settlement. Subject to Court approval, the Parties have agreed to settle the claims of Named Plaintiff Justin Fowler, the 19 Opt-In Plaintiffs, and Rule 23 New Mexico Putative Class Members (collectively, "Plaintiffs") for **$525,000.00** ("Settlement Amount"). The proposed settlement ("Settlement" or "Agreement") resolves all claims in the above-captioned lawsuit alleging that Defendants failed to comply with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the New Mexico Minimum Wage Act ("NMMWA"), and New Mexico common law by denying Plaintiff Fowler and similarly situated budtenders proper compensation by requiring them to participate in a mandatory tip pool

that unlawfully included Shift Leads and unlawfully distributed pooled tips to Shift Leads, whom Plaintiff alleges were supervisors. Throughout the litigation, and as part of this Settlement, Defendants continue to vigorously deny any unlawful conduct. The Settlement satisfies all the criteria for preliminary settlement approval. In addition, for the reasons set forth below, the Parties agree that a Rule 23 New Mexico Class should be certified for settlement purposes only. The Parties' Joint Motion is further supported by the Declaration of Molly A. Elkin, attached hereto as **Exhibit A** ("Elkin Decl.").

Accordingly, the Parties respectfully request that the Court: (1) preliminarily approve the Agreement attached hereto as **Exhibit B**; (2) approve the Settlement Notice attached hereto as **Exhibit C**; (3) appoint Rust Consulting, Inc. ("Rust" or "Settlement Administrator") as the administrator of the Settlement; (4) certify a class for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (5) appoint Justin Fowler as Class Representative of the New Mexico Class; (6) approve Molly A. Elkin and Sarah M. Block of McGillivary Steele Elkin LLP and Shane Youtz and Stephen Curtice of Youtz & Valdez PC as Class Counsel; and (7) instruct the Parties to appear for a Fairness Hearing on a date approximately 95 days from the date of the Preliminary Approval Order. A proposed Order is attached hereto as **Exhibit D**.

## II.    CASE BACKGROUND AND PROCEDURAL POSTURE

Plaintiff Fowler filed the Complaint on August 1, 2023, alleging violations of the FLSA, the NMMWA, and New Mexico common law. Dkt. 1. Specifically, Plaintiff alleged that Defendants denied him and similarly situated "budtenders" proper compensation by requiring them to participate in a mandatory tip pool that unlawfully included Shift Leads and unlawfully distributed pooled tips to these Shift Leads, whom Plaintiff alleged were supervisors. In addition

to Named Plaintiff Fowler, there are 19 Opt-In Plaintiffs (i.e., 10 New Mexico Opt-Ins and 9 Colorado Opt-Ins) who have filed consent-to-sue forms with the Court. There are 241 putative members of the "New Mexico Class" (i.e., the Named Plaintiff, the 10 New Mexico Opt-In Plaintiffs, and the persons identified by unique employee identification numbers in the data produced by Defendants who worked for one or more workweeks as budtenders in New Mexico at Defendants' retail store locations operating under the brand name R. Greenleaf between April 1, 2022, the date that Defendants began permitting budtenders and Shift Leads to accept tips from customers in New Mexico, and December 23, 2023, the date that Defendants ceased requiring the mandatory pooling of tips). With the 9 Colorado Opt-Ins, there are a total of 250 budtenders covered by the Agreement.

The Court conducted an Initial Scheduling Conference on October 17, 2023, during which the Parties jointly informed the Court that they were voluntarily entering mediation. Dkt. 28. In connection with preparing for mediation, counsel for the Parties exchanged information and data and engaged in good faith settlement negotiations. Elkin Decl. ¶ 19. The Parties entered mediation on February 1, 2024, with Counsel, the Named Plaintiff, and Defendants' representatives present. *Id.* ¶ 20. However, no agreement was reached. *Id.* ¶ 21. Thereafter, on February 8, 2024, the Parties accepted a mediator's proposal and reached agreement in principle to resolve this action. *Id.* Since that time, the Parties have continued to work to narrow the issues, identify areas of agreement, and have made additional concessions where appropriate leading ultimately to the attached Agreement.

Because this is an FLSA case and because Rule 23 claims have been asserted, the Court must now review and approve the Agreement pursuant to the FLSA and Fed. R. Civ. P. 23(e).

### III.    SETTLEMENT NEGOTIATIONS

Settlement negotiations were conducted at arm's length. Elkin Decl. ¶ 19. After negotiations over the scope of the potential New Mexico Class, on December 15, 2023, Defendants produced employment data for the Settlement Class Members, as well as data showing the amounts paid from the tip pools to Shift Leads.  Elkin Dec. ¶ 19. Plaintiffs used this data to calculated damages. *Id.* When Plaintiffs submitted their initial settlement demand on January 9, 2024, Plaintiffs also shared their damages spreadsheets with Defendants. *Id*. And, as mentioned above, the Parties received assistance in their settlement negotiations from an experienced mediator who ultimately helped the Parties to reach agreement. *Id.* ¶ 20. Defendants supplemented the pay data and hours of work data on March 2, 2024. *Id.* ¶ 19.

The Parties' negotiations were principled, with each side basing their offers and counteroffers on Defendants' Shift Lead tip distribution data and budtender employment dates. *Id.* ¶ 22. The Parties' positions at mediation were also based on their respective assessments of the claims asserted, the expected Opt-In Plaintiff and New Mexico Class Member testimony, and information exchanged by the Parties regarding Plaintiffs' allegations that Defendants violated wage and hour laws by requiring budtenders to participate in an unlawful tip pool. *Id.* ¶ 22. Defendants have vigorously denied Plaintiffs' claims and have consistently contended that their tip pools were valid and compliant with both New Mexico and federal law. The Parties negotiated within the context of their assessments of litigation risks with respect to all issues in the litigation. *Id*. After a full day of mediation, the Parties had not yet reached a settlement but agreed to consider a mediator's proposal. *Id.* ¶ 21. On February 8, 2024, the Parties accepted the mediator's proposal

and reached an agreement in principle to settle the litigation for $525,000. *Id.* The Parties thereafter reduced their agreement to writing in the form of the attached Agreement. *See* Ex. B.

### IV.    SUMMARY OF THE SETTLEMENT TERMS

#### A.  The Settlement Fund

The Parties have agreed to settle the litigation for $525,000.00. Pursuant to the terms outlined in the Agreement, within 14 days of the date the Court's Final Approval Order becomes final and unappealable, Defendants will deposit the Settlement Amount plus the employer's share of applicable payroll taxes into a Qualified Settlement Fund ("QSF") established by the Settlement Administrator. Ex. B, ¶¶ 3.1.j and 10.4. This amount will include: $322,813.67 to be allocated to the Named Plaintiff, Opt-In Plaintiffs, and New Mexico Class Members ("Settlement Class Members"); $10,000.00 to be allocated to the Class Representative as a service award; up to $9,285.00 for settlement administration costs; $171,049.33 in attorneys' fees; and $11,852.00 in litigation expenses. *Id.* ¶¶ 11.1 – 11.7. Defendants will also deposit an additional amount sufficient to cover the employer's share of payroll taxes into the QSF. *Id.* ¶ 3.1.j.

Within five (5) days of the funding of the QSF, the Settlement Administrator shall distribute the Settlement Payments to Settlement Class Members in accordance with the terms of the Agreement, Final Approval Order, and the instructions provided by Class Counsel pursuant to Paragraph 3.1.b of the Agreement regarding the settlement payments to be paid to each Settlement Class Member. *Id.* ¶ 12.1, 3.1.k… Of the total amounts to be paid to each Settlement Class Member, 50% will be designated as backpay and 50% will be designated as liquidated damages. *Id.* ¶ 11.8. Settlement Class Members will have 120 days to cash their settlement payment checks. *Id.* ¶ 3.1.l. 60 calendar days after the end of the 120-day cashing period, the Settlement

Administrator shall remit any funds remaining from uncashed checks to the unclaimed property fund in the state in which the Settlement Class Member worked and will notify that Settlement Class Member by mail and email. *Id.* ¶¶ 3.1.m and 12.3.

### B. Class Members

For purposes of settlement only, the term "Settlement Class Members" is all persons including the Named Plaintiff, Opt-In Plaintiffs, and the New Mexico Class Members. Ex. B, ¶ 1.4. The Named Plaintiff means Justin Fowler. *Id.* ¶ 1.1. "Opt-In Plaintiffs" means all individuals other than the Named Plaintiff who have previously filed consent forms and opted into the Litigation as identified in Exhibit A to the Settlement Agreement. *Id.* ¶ 1.2. The "New Mexico Class" includes Named Plaintiff, New Mexico Opt-Ins, and persons identified by Defendants by unique employee identification numbers in the data produced by Defendants on December 15, 2023, and updated by Defendants on March 2, 2024, (the "Data"), who worked for one or more workweeks as budtenders in New Mexico at Defendants' retail store locations operating under the brand name R. Greenleaf between April 1, 2022, and December 23, 2023. *Id.* ¶ 1.3.

There are 250 putative Settlement Class Members, including the Named Plaintiff, 19 Opt-In Plaintiffs (i.e., 10 New Mexico Opt-In Plaintiffs and 9 Colorado Opt-In Plaintiffs), and the New Mexico Class. *Id.* ¶ 1.4.

### C. Release of Claims

With respect to a release of claims, the Parties have agreed to the following limited release:

> "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which the Named Plaintiff, Opt-In Plaintiffs, and New Mexico Class

Members who do not opt out have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to payment of wages or tips for hours worked through December 23, 2023, except to the extent that any such claim may not be waived as a matter of law. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, tip pool violations, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq*., any and all claims under the New Mexico Minimum Wage Act (NMMWA) and New Mexico common law, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 100, et seq., to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Members' account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on an alleged wage and hour violation; and (iv) any and all wage-and-hour laws or wage-related claim of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including December 23, 2023. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment but not related to the wage claims described above including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state law statutes. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

Ex. B, ¶ 1.10. All Settlement Class Members' settlement checks shall contain, on the back of the check, the following endorsement:

> *CONSENT TO JOIN AND RELEASE OF CLAIMS:*
> By endorsing my signature on and negotiating this check, I consent to join the Fair Labor Standards Act claims in the case *Fowler v. Medicine Man Technologies Inc. d/b/a Schwazze,* Case No. 1:23-cv-00640-WJ-SCY (D.N.M.), and I agree to be bound by the Settlement Agreement and release of claims in that case.

*Id.* ¶ 11.9. The release of claims referenced in this endorsement is set forth in the Notice that will be sent to all Settlement Class Members. *See* Ex. C.

### D.  Distribution Formula and Notice Procedure

As discussed below in Section IV.F, Class Counsel will seek $171,049.33 of the Settlement Amount as attorneys' fees, and $11,852.00 as expenses. Ex. B, ¶¶ 11.2, 11.4. The percentage of the fund fee sought is equal to 33 and ⅓ percent of the Settlement Amount after expenses are deducted. The Parties have agreed that up to $9,285.00 will be allocated to Rust for settlement administration services.  Ex. B, ¶ 11.3. In addition, the Parties seek approval of $10,000.00 as a service award to the Class Representative. Ex. B, ¶ 11.5.

After these amounts are deducted from the Settlement Amount, the remaining net funds ("Net Settlement Amount") will be allocated among the Settlement Class Members as described herein. Ex. B, ¶ 11.7. Defendants will be solely responsible for paying the employer's share of payroll taxes in addition to the Settlement Amount. *Id.* ¶¶ 1.7, 3.1.j and 10.5. Class Counsel will be responsible for determining the amounts to be allocated to each Settlement Class Member, which will be based on a point system. Elkin Decl. ¶ 26. Specifically, as set forth in the proposed Notice (Exhibit C), the settlement payments are based on each Settlement Class Member's number of weeks of employment as a budtender. For New Mexico Class Members, the recovery period is April 1, 2022, through December 23, 2023. For Colorado Opt-In Plaintiffs, the recovery period is three years prior to the filing of their consent forms with the Court until December 23, 2023. For

each two-week pay period during the recovery period, Settlement Class Members were credited with 1 point if they worked as a budtender for 60 hours or more during the pay period, and half a point if they worked as a budtender for 59 hours or less. The total number of points were then divided into the Net Settlement Amount to determine the value of a point. The Settlement Payment to each Settlement Class Member is their number of points multiplied by the value of a point. Elkin Decl. ¶ 26; Ex. C. The approximate value of a full point is $86.30.[1] *Id.* The average Settlement award, after the payment of all fees, expenses, administrator fees and the service award, is $1,291.25. Elkin Decl. ¶ 26.

All Settlement Class Members will be provided with a court-approved Notice to be sent by U.S. Mail. Ex. B, ¶¶ 3.1.c,  6.1. Before mailing the Notice, the Settlement Administrator will run the Class Members' addresses through the National Change of Address database of the United States Post Office. *Id.* ¶ 6.1. The Notice will be sent within 14 days of the Court's Order preliminarily approving the Settlement. *Id.* ¶ 3.1.c. New Mexico Class Members shall have 60 calendar days from the date of the mailing to opt-out or object to the Settlement. *Id.* ¶ 3.1.d.

### E.  Service Award to Class Representative Justin Fowler

 Under the Agreement, a $10,000.00 service award payment will be made to the Named Plaintiff, Justin Fowler, who is also acting as the Class Representative. Ex. B, ¶ 11.5. Named Plaintiff Fowler came forward and assisted counsel with the factual investigation of the FLSA and Rule 23 claims and subsequently filed this action on behalf of himself and all those similarly situated. Elkin Decl. ¶ 28. Additionally, he spent considerable time participating in mediation,

---

[1] The value of a point is approximate because during the Notice period, budtenders will be given an opportunity to dispute the number of points assigned. If there are valid disputes, the value of a point will decrease.

requiring time off work, and in the Parties' ongoing settlement discussions. *Id.* He also provided invaluable assistance to Class Counsel, explaining the Defendants' tip pooling policies and procedures, budtenders' job duties, as well as Shift Leads' job duties. *Id.* "Courts have stated that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class." *Acevedo v. Southwest Airlines Co.,* No.1:16-cv-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) (citing *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed. Appx. 232, 235-36 (10th Cir. 2009)); *see also Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."). Notably, however, the "reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement." *Thompson v. Qwest Corp.,* No.17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). As one federal court explained in awarding service payments to plaintiffs involved in filing and litigating an unpaid overtime claim, "[i]n a wages and hours case, where a low-level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc*., No. 12 CIV. 3996 CM, 2014 WL 2199427, at *10 ( (S.D.N.Y. May 23, 2014).

Service awards are common in the Tenth Circuit, often in amounts equal to or exceeding $10,000 per plaintiff. *See, e.g., Montgomery v. Continental Intermodal Group-Trucking LLC,* No. 19-940 GJF, 2021 WL 1339305, at *8-9 (D.N.M. Apr. 9, 2021) (approving service payment of

$25,000 to named plaintiff in NMMWA and collecting cases); *Jones v. I.Q. data Int'l, Inc.,* No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving $20,000 service award out of total settlement fund of $1 million); *In re Universal Service Fund Telephone Biling Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, *2 (D.N.M. May 12, 2011) (awarding $10,000 service award to named plaintiff); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving $10,000 service award).

In determining whether a service award is warranted, courts in the Tenth Circuit consider the following factors: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Lucken Family Ltd. P'ship, LLLP.*, 2010 WL 5387559, at *6; *see also Peterson v. Nelnet Diversified Sols., LLC,* No. 17-cv-01064-NYW, 2022 WL 408241, at *5 (D. Colo. Feb. 10, 2022) (quoting *Lucken Family Ltd. P'ship*, 2010 WL 5387559, at *6). Here, the Class Representative has taken great steps to protect the interests of the Settlement Class and the Class will significantly benefit from his actions. Plaintiff Fowler put in substantial efforts to assist in litigating the case. Elkin Decl. ¶ 28.

### F.  Attorneys' Fees and Expenses

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Likewise, the NMMWA provides for a mandatory award of reasonable attorneys' fees to be paid by the Defendants. N.M. Stat. § 50-4-26(E).

Consistent with the Agreement, Class Counsel will seek approval of attorneys' fees in the amount of $171,049.33 in this common fund settlement, which equals thirty-three and one-third percent (33 ⅓ %) of the Settlement Amount after the deduction of Class Counsel's litigation expenses of $11,852.00. Ex. B, ¶¶ 11.2-11.5; *see, e.g., Cisneros v. EP Wrap-It Insulation, LLC,* Civ. No. 19-500 GBW/GJF, 2021 WL 2953117, at *8 (D.N.M. Jul. 14, 2021) ("[T]he Court notes that the proposed fee of one-third of the total settlement is a standard contingent fee in class actions in this and other district courts in this circuit."); *Acevedo,* 2019 WL 6712298, at *4 (in FLSA and NMMWA case, holding attorneys' fee award of "33.33% of the gross recovery is reasonable and in line with similar awards"); *Lucken,* 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."). Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will seek approval of their attorneys' fees and reimbursement of litigation expenses when the Parties file their Joint Motion for Final Approval of the Settlement. Ex. B, ¶ 3.1.f. Pursuant to the terms of the Agreement, Defendants do not and will not oppose Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses in these amounts. *Id.* ¶ 9.4.

### G. Settlement Administration

The Parties will retain Rust to act as the independent Settlement Administrator. Ex. B, ¶ 4.1. Rust will be responsible for mailing Notices to Settlement Class Members, opening and managing the QSF, issuing tax forms, distributing Settlement Payments, and performing other tasks consistent with the Agreement. Ex. B, ¶¶ 4.1 and 12.1. Rust will be paid up to $9,285.00 from the Settlement Amount deposited into the QSF. *Id.* ¶ 11.3.

## V.    THE COURT SHOULD CERTIFY A RULE 23 NEW MEXICO CLASS FOR SETTLEMENT PURPOSES

Before providing preliminary approval of a proposed class action settlement, the Court must first certify the Rule 23 class for settlement purposes. *Charlie v. Rehoboth McKinley Christian Healthcare Servs.,* Civil No. 21-652 SCY/KK, 2023 WL 131060, at *2 (D.N.M. Jan. 9, 2023);  Fed. R. Civ. P. 23(c), (e). A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Notably, a class may be approved for settlement purposes even if that class might otherwise not pass muster under Rule 23, and regardless of whether "the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court does not inquire into the merits and, instead, focuses only on assessing the proposed class according to Rule 23(a) and (b). *Cisneros,* 2021 WL 2953117, at *2-3.

Here, as set forth above, the proposed New Mexico Class consists of the following:

> The Named Plaintiff, the New Mexico Opt-In Plaintiffs, and the persons identified by Defendants by unique employee identification numbers in the data produced by Defendants on December 15, 2023, and March 2, 2024, who worked for one or more workweeks as budtenders in New Mexico at Defendants' retail store locations operating under the brand name R. Greenleaf between April 1, 2022, the date that Defendants began permitting budtenders and Shift Leads to accept tips from customers, and December 23, 2023, the date that Defendants ceased requiring the mandatory pooling of tips.

*See* Ex. B, ¶ 1.3. For the reasons set forth below, the proposed class satisfies all the requirements of Rule 23(a) and (b).

### A.  Numerosity Required by Rule 23(a)(1) is Satisfied

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." A class of at least 50 members is sufficient to demonstrate that joinder would be

impracticable. *Bustillos v. Bd. of Cnty. Com'rs of Hidalgo Cnty.,* 310 F.R.D. 631, 669 (D.N.M. 2015) (collecting cases). Here, per the Defendants' records produced on December 13, 2023 and March 2, 2024, there are 241 New Mexico Class Members, inclusive of the Named Plaintiff and 10 New Mexico Opt-In Plaintiffs. The numerosity requirement is satisfied.

### B. Commonality Required by Rule 23(a)(2) is Satisfied

Rule 23(a)(2) requires that there be "only a single question of law or fact common to the class." *Cisneros,* 2021 WL 2953117 at *3. Indeed, "[c]ommonality may be found where the class is challenging a commonly applied policy." *Id.* Here, all putative New Mexico Class Members are or were budtenders in Defendants' R. Greenleaf retail locations in New Mexico, had the same job duties and responsibilities, and were subject to the same workplace policies and practices— namely, the same policies and practices with respect to pooling and sharing of tips. *See* Dkt. 1, ¶¶ 30-33, 46. Further, whether Defendants had a policy and practice of requiring the budtenders to unlawfully share their tips with Shift Leads is a question capable of common resolution, as it turns on the applicability of N.M. Stat. § 50-4-22(C) to the budtenders, workers who made a direct wage of at least the minimum wage, and whether the Shift Leads are "wait staff" for purposes of the NMMWA. *See* N.M. Stat. § 50-4-22(C). Commonality has been satisfied.

### C. Typicality Required by Rule 23(a)(3) is Satisfied

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class." This means that there must be "a sufficient nexus between the claims of the class representatives and the common questions of law or fact which unite the class." *Cisneros,* 2021 WL 2953117 at *3. Class Representative Fowler alleges that he worked for Defendants as a budtender at R. Greenleaf retail stores in New Mexico since April 1,

14

2022, the date that Defendants began permitting budtenders and Shift Leads to begin accepting tips from customers, Dkt. 1, ¶¶ 4, 60-61, and was required to participate in a tip pool that included Shift Leads. Dkt. 1, ¶¶ 30-32. Fowler alleges that this practice of requiring tip-sharing with Shift Leads violates the NMMWA and New Mexico common law. These are the same claims which would be asserted by all Class members based on similar facts, so typicality is met.

### D.  Adequacy Required by Rule 23(a)(4) is Satisfied

Rule 23(a)(4) allows class certification only if the named representatives will "fairly and adequately protect the interests of the class." This requirement is essential to due process, as a judgment in a class action is binding on all class members. *See generally Hansberry v. Lee*, 311 U.S. 32 (1940). The Tenth Circuit requires that the Court ask two questions in determining if the adequacy requirement is met: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously and on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002). Both questions are easily answered and demonstrate adequacy.

First, the Class Representative has the same interests as the rest of the New Mexico Class he seeks to certify: as a budtender working for Defendants at R. Greenleaf retail locations, he seeks to recover the tips he earned but which were unlawfully distributed to Shift Leads in violation of the NMMWA and New Mexico common law. Second, the Class Representative and his counsel have vigorously prosecuted this action. Fowler has actively participated in the litigation, including participating in numerous conferences with his counsel and attending the February 1, 2024, mediation. Elkin Decl. ¶ 28. Additionally, Class Counsel at McGillivary Steele Elkin LLP and Youtz & Valdez PC are experienced in handling wage and hour class and collective action

litigation nationwide. *Id.* ¶ 1-14, 16-17. For example, Molly A. Elkin has over 29 years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases, including numerous cases brought on behalf of tipped workers, and has served as lead counsel in many multi-plaintiff court and arbitration cases. *Id.* ¶¶ 2-3. Similarly, the attorneys at Youtz & Valdez PC have considerable experience litigating wage and hour class and collective action cases on behalf of workers in New Mexico and elsewhere. *Id.* ¶¶ 16-17. *See also Cisneros,* 2021 WL 2953117 at *4 (noting that Class Counsel, including the firm of Youtz & Valdez, "are experienced in handling wage and hour class and collective actions"). Class Counsel have been actively involved in litigating the case since its inception and in resolving this case through mediation. There can be no question the adequacy requirement has been met.

### E. Predominance and Superiority Required Rule 23(b)(3) Are Met

#### i. *Predominance*

Rule 23(b)(3)'s predominance test focuses on the number and significance of common questions and "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Amchem Products*, 521 U.S. at 623 (citing 7A Wright, Miller, & Kane 518-19). Predominance requires that "common questions subject to generalized, classwide proof *predominate* over individual questions." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (emphasis in original). Significantly, "the presence of some individual questions does not destroy predominance." *Bustillos,* 310 F.R.D. at 671.

Here, as noted above, the New Mexico class action claims focus on an issue common to all members of the putative class: whether Defendants' tip pooling policies and practices, wherein

budtenders were required to share tips with Shift Leads, violated the NMMWA and New Mexico common law. Although each Class Member would be entitled to a different amount of damages based on the tips disgorged from the Shift-Leads at their store locations and based on their hours of work, this Court has held that "individualized damages are insufficient to outweigh the predominance of common questions of liability." *Cisneros,* 2021 WL 2953117 at *4. Because the state law claims of all New Mexico Class Members hinge on the same generalized evidence of the Defendants' tip-sharing policies and practices, the predominance requirement is satisfied.

### ii. Superiority

In determining whether a class action is superior to other available methods, Rule 23(b)(3) identifies four elements that are pertinent to a court's determination, only three of which are necessary to assess when parties request class certification for settlement purposes only: (A) the class members' interests in controlling their own separate actions; (B) the extent and nature of any relevant, pending, litigation brought by or against class members; and (C) the desirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)-(C). The superiority requirement is intended to ensure that a class action would achieve "economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.,* 521 U.S. at 615 (quoting Advisory Committee Notes to Rule 23). In this case, a class action is superior to other available methods for enforcing the New Mexico Class Members' rights under New Mexico law.

First, individual actions controlled and prosecuted by 241 individual plaintiffs asserting identical claims would burden both the Court and the Class Members. Relatedly, there is "no indication that any class member has an individualized interest in litigating the claims at issue

here." *Cisneros,* 2021 WL 2953117 at *4. Second, the Parties are unaware of any relevant pending litigation brought by or against New Mexico Class Members. Third, it is desirable to concentrate the litigation in the District of New Mexico because all New Mexico Class Members earned tips (and were required to participate in a tip pool) in New Mexico and bring claims under New Mexico law. *See Cisneros,* 2021 WL 2953117 at *4. Accordingly, superiority is satisfied, and the Court should certify the New Mexico Class for settlement purposes.

## VI.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.  Legal Standards for Settlement Approval

Court approval is required to settle both an FLSA collective action and a Rule 23 class action. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Fed. R. Civ. P. 23(e). FLSA settlements are reviewed only to determine "that the parties have a bona fide dispute and that there is no apparent defect in the parties' negotiations." *Cisneros,*2021 WL 2953117, at *2. Likewise, under Rule 23(e), a "proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Charlie,* 2023 WL 131060, at *2. Notably, in hybrid FLSA/Rule 23 cases like this one, because "the standard for settlement approval under Rule 23 is considerably stricter and fairly subsumes the FLSA standard, the Court will presume that a settlement approved under Rule 23 can also be approved under the FLSA." *Cisneros,* 2021 WL 2953117, at *2.

Courts in the Tenth Circuit look to a number of factors in evaluating whether a class action settlement should be preliminarily approved. First, the Court looks to the factors set forth in Rule

23, specifically whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees; and (iv) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 26(e)(2); *Cisneros,* 2021 WL 2953117, at *5. Courts in the Tenth Circuit must also consider the following additional factors in approving a Rule 23 settlement ("*Rutter* Factors"): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Cisneros,* 2021 WL 2953117, at *5 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002)). All of these factors weigh heavily in favor of settlement approval here.

**B. The Proposed Settlement Satisfies the Rule 23(e) Factors**

*1. Class Counsel and the Class Representative Have Adequately Represented the Settlement Class*

As this Court has explained, this factor focuses on "the actual performance of counsel acting on behalf of the class." *Montgomery,* 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). As discussed above in Section V. D, Class Counsel have "substantial experience litigating wage and hour cases" and "were able to draw on their prior experience in similar litigation to achieve a manifestly favorable settlement." *Id.* As such, Class Counsel have adequately represented the Settlement Class particularly as the Agreement provides

outstanding relief for the Settlement Class. The settlement provides for approximately 32% of the total relief sought (i.e., 32% of all backpay sought *plus* an amount equal to *two* times the backpay as liquidated damages) despite the significant risks faced by Plaintiff and the Settlement Class. Elkin Decl. ¶ 29.

### 2. *The Proposal Was Negotiated at Arm's Length*

"The second factor focuses on whether the settlement negotiations 'were conducted in a manner that would protect and further the class interests.'" *Montgomery,* 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." *Id.* (quoting 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011)) (internal quotations omitted)*; see also Sandoval v. Tharaldson Employee Mgmt. Inc.,* No. EDCV 08-482-VAP (OPX), 2010 WL 2486346, at *6 (C.D. Cal. Jun. 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Here, the initial discovery—namely, payroll, tip distribution records, hours worked data, and sworn declarations from Shift Leads—enabled the Parties to engage in informed negotiations, culminating in a full-day mediation with an experienced mediator and acceptance by both Parties of a mediator's proposal. Elkin Decl. ¶¶ 19-21. The settlement was negotiated at arm's length.  *Id.*

### 3. *The Relief Provided to the Class is Adequate*

#### i. <u>The Relief Provided is Adequate Taking Into Account the Costs, Risks, and Delay of Trial and Appeal</u>

This factor "recognizes that while the 'relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'the cost and risk

involved in pursuing a litigated outcome.'" *Montgomery,* 2021 WL 1339305, at \*5 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes). Here, the settlement "provides substantial monetary payments to the class members and enables them to avoid real litigation risks." *Id.*

Plaintiffs face significant risks in establishing that the provision in the New Mexico law that prohibits tip pooling by any workers other than "wait staff" applies to employers who do not take a tip credit. Defendants strenuously argued that the NMMWA provision prohibiting tip pooling does not apply to them or the Class because the Settlement Class Members earned a direct wage of at least the minimum wage, and the prohibition on tip pools applies only to employers who take advantage of paying workers the lower tip credit wage. Even assuming the NMMWA applies to the budtenders, who all earn at least the minimum wage, proving that Shift Leads are not "wait staff" for purposes of the NMMWA, would have had challenges, namely, because Shift Leads spend a portion of their shift waiting on customers, side by side with the budtenders. Moreover, to date, there is no case law defining or interpreting this term as used in the NMMWA. Plaintiffs face similar risks under the FLSA in proving that Shift Leads qualify as supervisors or managers under 29 C.F.R § 541.100, which they would have to do to show that the tip pool here violates the law. Moreover, absent settlement, the Parties would need to engage in substantial discovery, class certification briefing, summary judgment briefing and, eventually, trial. It is also likely that both sides would seek to appeal any unfavorable judgment, particularly given this relatively untested area of the law. To continue to litigate this case would be very costly, whereas settlement now provides the Settlement Class Members with a substantial portion of the relief to which they would be entitled on their very best day in court. Elkin Decl. ¶¶ 23, 29.

Accordingly, "[g]iven that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation." *Montgomery,* 2021 WL 1339305, at *5.

### ii. The Relief Provided is Adequate Taking Into Account the Effectiveness of the Proposed Method of Distribution

In analyzing this factor, the court "scrutinizes the method of claims processing to ensure that it facilitates filing legitimate claims and should be alert to whether the claims process is unduly demanding." *Montgomery,* 2021 WL 1339305, at *5 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes). Here, there is no claims process—Settlement Class Members will receive a settlement payment unless they affirmatively opt out. Also the "notice process constitute[s] the best notice practicable under the circumstances," *id.,* given that the Notice will fully and accurately inform the Class of "all material elements" of the Settlement, including the amount of each individual's settlement, and the amount of the service award and the attorneys' fees to be requested by Class Counsel. Further, the method of distributing relief to the Class is effective. Payments will be mailed by Rust within 19 calendar days of the settlement's effective date. *See Chavez Rodriguez v. Hermes Landscaping Inc.,* No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. Jun. 18, 2020) (checks distributed by hand and/or mail meet Rule 23 requirements); Ex. B, ¶ 3.1. j. and k.

### iii. The Relief Provided is Adequate Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees

After attorneys' fees, reimbursement of litigation expenses, the service award payment, and the settlement administration costs, the Settlement Class will split $322,813.67. All 241 New Mexico Class Members and the 9 Colorado Opt-Ins will share in the redistributed tips earned by

the Shift Leads with the allocation taking into account whether the Class Member was a full time or part time budtender. The average award after all fees, expenses, administration costs and the service award payment, is $1,291.25. Elkin Decl. ¶ 26. Given the litigation risks, expense, and delay discussed in Section VI.B.3.i, *supra*, the relief provided is adequate.

### iv.    The Relief is Adequate Taking Into Account Any Agreement Required to be Identified Under Rule 23€(3)

The Court must monitor any "side agreements" to settle claims by any objectors, as "the outcome of these side agreements may inform the Court as to whether the value of the Settlement Agreement is adequate." *In re Samsung Top-load Washing Machine Marketing, Sales Practices and Prod. Liab. Litig.,* MDL Case No. 17-ml-2792-D, 2020 WL 2616711, at *18 (W.D. Okla. May 20, 2020). There are no such side agreements, and the Parties anticipate none. Elkin Decl. ¶ 31. Where there are no side agreements and the Parties file the Agreement with the Court setting forth the planned distribution/allocation of settlement funds, this factor is satisfied. *See Anderson Living Trust v. Energen Resources Corp.,* CV No. 13-909 WJ/CG, 2021 WL 3076910, at *5 (D.N.M. Jul. 21, 2021).

### 4.    *The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other*

With respect to this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Montgomery,* 2021 WL 1339305, at *8 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes) (internal quotations omitted). Here, all Settlement Class Members have the same claims for unlawfully retained tips, so "settlement shares for each class member

will be derived using an identical formula applied to all class members" based on a point system, with points allocated based on weeks worked as budtenders. *Id.*; *see also* Ex. B, ¶ 11.8. Additionally, for fairness purposes, full time budtenders will receive double the amount of points as part time budtenders. Ex. B, ¶ 11.8. Specifically, for each two-week pay period at issue, Settlement Class Members were credited with 1 point if they worked 60 hours or more as a budtender during the pay period, and half a point if they worked as a budtender for 59 hours or less. Similarly, all Settlement Class Members will be subject to the same release of claims. *Id.* ¶ 1.10. *See Cisneros,* 2021 WL 2953117, at *8 (noting that Courts routinely approve "hybrid" settlements of FLSA and state law claims). As such, all Settlement Class Members will be treated equitably relative to each other, so this factor weighs in favor of preliminary approval.

### C.  The Proposed Settlement Terms are Fair, Reasonable and Adequate Under the *Rutter* Factors

#### 1.  The Proposal Was Fairly and Honestly Negotiated (Factor 1)

For the reasons set forth in Section VI.B.2, *supra,* discussing that the settlement was negotiated at arm's length, the proposed settlement terms were fairly and honestly negotiated by both parties. *See Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006).

#### 2.  Serious Questions of Fact and Law Exist, Placing the Ultimate Outcome of the Litigation in Doubt (Factor 2)

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas,* 234 F.R.D. at 693-94. While Plaintiff believes the Class claims are strong, as set forth in Section VI.B.3.i, both Parties face risks regarding the ultimate determination of whether Shifts Leads are "wait staff"

24

under the NMMWA, or are "supervisors or managers" under the FLSA, such that their inclusion in a tip pool with budtenders is unlawful.

### 3. The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation (Factor 3)

As explained more fully above, "[i]f this case were to be litigated, in all probability it would be many years before it was resolved." *Lucas,* 234 F.R.D. at 694. This case is still in the early stages, with discovery, briefing on class certification and summary judgment, and potentially trial and appeals, with all their attendant risks, on the horizon absent settlement. The settlement, on the other hand, provides "substantial, guaranteed relief" now rather than the mere possibility of future relief years down the road. *Id.*

### 4. The Parties Believe the Settlement is Fair and Reasonable (Factor 4)

Here, both Parties were represented by experienced counsel who believe that the settlement is fair and reasonable. Notably, "[c]ounsel's judgment as to the fairness of the agreement is entitled to significant weight." *Anderson Living Trust,* 2021 WL 3076910, at *6 (quoting *Lucas,* 234 F.R.D. at 695) (internal quotation marks omitted). As set forth above, Class Counsel has substantial experience litigating wage and hour class and collective actions. Elkin Decl. ¶¶ 3, 14-17. Similarly, Defendants have been represented by experienced counsel at Littler Mendelson P.C., namely David Jordan, whose practice of over 20 years focuses on employment litigation including complex class and collective action litigation. *See* "David B. Jordan," *Littler,* https://www.littler.com/people/david-b-jordan (last accessed Mar. 1, 2024). Given the risks of continuing to litigate the case, based on Counsel's professional experience, the Parties believe that the settlement is fair, reasonable, and adequate. The settlement will provide significant relief to all

New Mexico Class Members and Opt-In Plaintiffs and should be considered an outstanding result. Elkin Decl. ¶ 29.

## VII.    THE COURT SHOULD APPROVE THE SETTLEMENT NOTICE

Before conducting a Final Fairness Hearing, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1). "Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). "The hallmark of the notice inquiry…is reasonableness." *Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417, 436 (D.N.M. 1988).

The attached Notice is the best practicable notice as it is clear, thorough, and reasonably calculated to apprise all Settlement Class Members of the pending settlement and affords absent New Mexico Class Members an opportunity to present their objections or opt-out.[2] Ex. C. Importantly, the Notice also: allows all Settlement Class Members to review and challenge the number of points that have been allocated to them for purposes of assigning a settlement award; explains how the Settlement Amount will be allocated; sets forth the amount of fees, expenses, service payment, and settlement administration costs that will be paid out of the Settlement Amount; and notifies the class of the Fairness Hearing. *Id.* Further, the Notice will be sent by U.S. Mail, with the Settlement Administrator performing skip-trace searches in the event of returned mailings. Ex. B, ¶¶ 6.2. Accordingly, approval of the Notice is warranted.

---

[2] All Opt-In Plaintiffs have been notified of the settlement terms including the value of a point, the amount of their settlement payments and other payments, including fees and expenses, that will be made under the Agreement. They were given an opportunity to object, and none did.  Elkin Decl. ¶ 30.

## VIII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter an Order: (1) preliminarily approving the settlement reached by the Parties as embodied in their Settlement Agreement (**Exhibit B**); (2) approving the Notice attached hereto (**Exhibit C**); (3) appointing Rust Consulting, Inc. as the settlement administrator; (4) certifying a class for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (5) approving Justin Fowler as Class Representative of the Settlement Class; (6) approving Plaintiffs' Counsel at McGillivary Steele Elkin LLP and Youtz & Valdez PC as Class Counsel; (7) instructing the parties to appear for a Fairness Hearing on a date approximately 95 days from the date of the Preliminary Approval Order; and (9) granting other and further relief as the Court may deem just and proper. A proposed Order is attached hereto as **Exhibit D.**

Dated: March 22, 2024                    Respectfully submitted,

*/s/ Stephen Curtice*
Shane Youtz
Stephen Curtice
James A. Montalbano
Youtz & Valdez PC
900 Gold Ave. SW
Albuquerque, NM 87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com

*/s/ Molly A. Elkin*
Molly A. Elkin (*admitted pro hac vice*)
Sarah M. Block (*admitted pro hac vice*)
Rachel Lerner (*admitted pro hac vice*)
McGillivary Steele Elkin LLP
1101 Vermont Ave., NW, Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855

mae@mselaborlaw.com
smb@mselaborlaw.com
rbl@mselaborlaw.com

***Attorneys for Plaintiffs***

*/s/ David B. Jordan*

David B. Jordan
*Admitted Pro Hac Vice*
djordan@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:    713.951.9400
Facsimile:    713.951.9212

Kimberly Kauffman
*Admitted Pro Hac Vice*
kkauffman@littler.com
LITTLER MENDELSON, P.C.
1000 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:    512.982.7250

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered by electronic notification through the CM/ECF system to all parties of record this 22nd day of March, 2024.

*/s/ Stephen Curtice*

Stephen Curtice