## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUSTIN FOWLER, and all others similarly
situated,

        Plaintiff,

          v.

MEDICINE MAN TECHNOLOGIES,
INC. d/b/a/ SCHWAZZE, et al.,

        Defendants.

Civil Action No. 1:23-cv-00640-WJ-SCY

## JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
## STIPULATION OF DISMISSAL

**I.   INTRODUCTION**

Subject to final Court approval, the Parties have settled the claims of Named Plaintiff Justin

Fowler, the 19 Opt-In Plaintiffs,[1] and the Rule 23 Class certified for settlement purposes only

(collectively, "Plaintiffs") for $525,000.00. The settlement resolves all claims in the lawsuit.

Specifically, it resolves Plaintiffs' allegations that Defendants Medicine Man Technologies, Inc.

d/b/a Schwazze, Schwazze New Mexico, LLC, and R. Greenleaf Organics, Inc. ("Defendants")

failed to comply with the Fair Labor Standards Act, 29 U.S.C. ¶ 201, *et seq.* ("FLSA"), the New

Mexico Minimum Wage Act ("NMMWA"), and New Mexico common law by requiring them to

participate in a mandatory tip pool that unlawfully included Shift Leads and unlawfully distributed

pooled tips to Shift Leads, whom Plaintiffs allege were supervisors.

---

[1] Ten of the Opt-In Plaintiffs are in New Mexico and are also members of the New Mexico Class.
The remaining nine Opt-In Plaintiffs are in Colorado.

In advance of the July 17, 2024, Fairness Hearing, and consistent with Paragraphs 3.1.g and 9.3 of the Settlement Agreement ("Settlement" or "Agreement"), Dkt. 34-2, the Parties submit this Joint Motion for Final Approval of Settlement and Stipulation of Dismissal. As set forth below, the Settlement satisfies all criteria for final approval. Accordingly, the Parties respectfully request that the Court issue final approval of the Agreement and an Order reflecting that: (1) a bona fide legal dispute between the Parties as to whether Settlement Class Members (as defined in Section III. below) are owed any wages, redistributed tips, or statutory damages exists; (2) the Agreement, Dkt. 34-2, including all information contained in the Settlement Notice,[2] is approved as fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out of the Settlement; (3) the procedure for Defendants to pay the Settlement Amount along with the employer's share of payroll taxes into the Qualified Settlement Fund ("QSF") as described in Paragraphs 1.7, 10.3, 10.5, and 13.2 of the Agreement is approved; (4) the Administration of the QSF as described in Paragraphs 10-13 of the Agreement is approved; (5) the claims of the Named Plaintiff, Opt-In Plaintiffs, and the New Mexico Class Members who have not timely opted out of the Settlement are dismissed with prejudice; (6) the Attorneys' Fees and Litigation Expenses set forth in Paragraph 9.4 of the Agreement are approved; (7) the Service Award set forth in Paragraph 11.5 is approved; (8) the Settlement Administration Costs to the Settlement Administrator in an amount not to exceed $9,285.00 as set forth in the Paragraph 11.3 of the Agreement are approved; (9) a class comprising the New Mexico Class as defined in the Parties' Agreement is certified for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; and (10)

---

[2] The Parties filed a revised Notice of Class Action and FLSA Settlement following their status conference with the Court on April 8, 2024. *See* Settlement Notice, Dkt. 41; Exhibit A to Exhibit B, Declaration of Jennifer Mills for Rust Consulting, Inc. ("Rust Decl.").

jurisdiction over the interpretation and implementation of the Agreement will be retained by the Court as set forth in Paragraph 16.2 of the Agreement. A proposed Order is attached as Exhibit A.

## II.    THE COURT'S PRELIMINARY APPROVAL ORDER

On March 22, 2024, the Parties submitted a Joint Motion for Preliminary Approval of FLSA and Class Action Settlement, which set forth a detailed factual and procedural history of this litigation.[3] Dkt 34. The Court granted the Parties' Motion on April 1, 2024. Dkt. 35. Specifically, the Court issued an Order preliminarily approving the Settlement Agreement, ordering issuance of settlement Notice to Class members, appointing Rust Consulting, Inc. as the settlement administrator, approving a class for settlement purposes only pursuant to Rule 23(e), appointing Justin Fowler as Class Representative, appointing Plaintiffs' counsel at McGillivary Steele Elkin LLP and Youtz & Valdez PC as Class Counsel, and ordering the Parties to appear for a Fairness Hearing. *Id.*

## III.    SETTLEMENT TERMS

A detailed background regarding the arm's-length settlement negotiations between the Parties, and the terms of the Settlement Agreement that resulted from those negotiations, are set forth in the Parties' Joint Motion for Preliminary Approval of FLSA and Class Action Settlement. Dkt. 34. The terms of the Settlement Agreement, Dkt. 34-2, have not changed since April 1, 2024, the date of preliminary approval of the settlement.

Pursuant to Paragraph 3.1.j of the Settlement Agreement, Defendants will deposit the Settlement Amount of $525,000.00 plus the employer's share of applicable payroll taxes into a Qualified Settlement Fund ("QSF"). Agreement, Dkt. 34-2 ¶ 3.1.j, 10.5. This amount will

---

[3] Along with this Joint Motion, Plaintiffs contemporaneously filed their Unopposed Motion for Approval of Attorneys' Fees and Litigation Expenses.

comprise: (1) $322,813.67 to be allocated to the Class Representative, Opt-In Plaintiffs, and New Mexico Class Members ("Settlement Class Members"); (2) $10,000.00 to be allocated to the Class Representative as a service award; (3) up to $9,285.00 in settlement administration costs; (4) $171,049.33 in attorneys' fees; and (5) $11,852.00 in litigation expenses. *Id.* ¶¶ 11.1-11.7. Within 5 days of the funding of the QSF, the Settlement Administrator shall distribute the Settlement Payments to Settlement Class Members in accordance with the terms of the Agreement, Final Approval Order, and the instructions provided by Class Counsel pursuant to Paragraph 3.1.b of the Agreement regarding the settlement payments to be paid to each Settlement Class Member. *Id.* ¶¶ 12.1, 3.1.k. Of the total amounts to be paid to each Settlement Class Member, 50% will be designated as backpay and 50% will be designated as liquidated damages. *Id.* ¶ 11.8.

## IV.  ISSUANCE OF NOTICE AND RESULTS OBTAINS

On April 8, 2024, Defendants provided Rust with the names, mailing addresses, and applicable employment information for the 249 Settlement Class Members.[4] Rust Decl., ¶ 6. That same day, Class Counsel provided Rust with the point allocations and payment amounts for each Settlement Class Member. *Id.*

Rust updated the addresses by processing them through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service to obtain the most up-to-date address available. *Id.*, ¶ 7. On April 15, 2024, Rust mailed Settlement Notices to the 249 Settlement Class Members contained in the class list. *Id.*, ¶ 8. Rust performed address traces on 24 Settlement Notices that were returned as undeliverable. *Id.*, ¶ 9. Of the 24 traces performed, 19 more current addresses were obtained and Rust promptly remailed those Notices to the more current addresses.

---

[4] Following further investigation, the Parties determined that there are 249 Class Members, rather than 250 Class Members as referenced in the Settlement Agreement and Joint Motion for Preliminary Approval.

*Id.* Of the 19 Settlement Notices mailed to a more current address identified from the trace, six (6) Settlement Notices were returned to Rust as undeliverable a second time. As of this date, 11 Settlement Notices remain undeliverable. *Id.*

The Settlement Notice advised Settlement Class Members of their right to object to the Settlement, their right to opt-out, and their right to dispute the points and associated monetary awards allocated to them which were based on their weekly work hours and their length of employment as a budtender. *See* Settlement Notice, Dkt. 41; Exhibit A to Rust Decl. No Settlement Class Member disputed their point allocation. Rust Decl., ¶ 11. Likewise, no Settlement Class Member objected to the Settlement, nor did a single Class Member opt out of the Settlement. *Id.*, ¶¶ 12, 13.

The entirely favorable response from the Settlement Class following a robust and effective notice period shows that the Settlement is adequate and supports final approval. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number [of objections] are received, the fact can be viewed as indicative of the adequacy of the settlement."); *see also Tennille v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (holding that a "fully descriptive notice [that] is sent [by] first-class mail to each class members, with an explanation of the right to 'opt out,' satisfies due process").

## V.    THE COURT SHOULD FINALLY CERTIFY A RULE 23 NEW MEXICO CLASS FOR SETTLEMENT PURPOSES

Final class certification cannot occur until after the fairness hearing. *Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2022 WL 2304146, at *3 (D.N.M. June 27, 2022) (("The ultimate decision to certify the class for purposes of settlement cannot be made until the

hearing on final approval of the proposal settlement.") (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment)). When a court has already certified a class, as it has here, *see* Dkt. 35, "the only information ordinarily necessary [for final approval] is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification has been granted." Fed R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. Because no such changes have occurred in the time since the Court found that the class satisfied the Rule 23 requirements for settlement purposes, the Court should finally certify a class.[5] *See Cisneros*, 2022 WL 2304146, at *3 (finally certifying a class for settlement purposes after the Court had certified a class in granted the preliminary approval and where the class had not changed); *see also Harris v. Vector Mktg.*, No. C-08-5198, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) (finding that when a Court had previously certified a Rule 23(b)(3) class, the Court "need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable"); *Sigma Beta Xi, Inc. v. County of Riverside*, Case No. EDCV 18-1399 JGB, 2020 WL 13094025, at *6 (C.D. Cal. June 22, 2020) (confirming a Class Certification Order when the "parties have made no changes to the proposed Settlement Class since it was certified by the Court").

## V.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

### a.    Standard for Final Settlement Approval

---

[5] The Rule 23 New Mexico Class certified for settlement purposes comprises: The Named Plaintiff, the New Mexico Opt-In Plaintiffs, and the persons identified by Defendants by unique employee identification numbers in the data produced by Defendants on December 15, 2023, and March 2, 2024, who worked for one or more workweeks as budtenders in New Mexico at Defendants' retail store locations operating under the brand name R. Greenleaf between April 1, 2022, the date that Defendants began permitting budtenders and Shift Leads to accept tips from customers, and December 23, 2023, the date that Defendants ceased requiring the mandatory pooling of tips. Dkts. 34 and 35.

Court approval is required to settle both an FLSA collective action and a Rule 23 class action. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Fed. R. Civ. P. 23(e). Due to the "overriding public interest in favor of settlement," there is a presumption in favor of approval. *See Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (internal quotation marks omitted). Notably, in hybrid FLSA/Rule 23 cases like this one, because "the standard for settlement approval under Rule 23 is considerably stricter and fairly subsumes the FLSA standard, the Court will presume that a settlement approved under Rule 23 can also be approved under the FLSA." *Cisneros v. EO Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2021 WL 2953117, at *2 (D.N.M. July 14, 2021).

In determining whether to finally approve a settlement, the Court must consider whether a settlement is fair, reasonable, and adequate. *See Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Tenth Circuit also looks at the four *Rutter* factors in evaluating whether a settlement is fair, reasonable, and adequate. These four factors are:

(1)     Whether the proposed settlement was fairly and honestly negotiated;

(2)     Whether serious questions of law and fact exist; placing the ultimate outcome of the litigation in doubt;

(3)     Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     The judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Corp.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotation marks omitted). Courts consider "the judgment of counsel and the presence of good faith bargaining between the contending parties" and "have consistently refused to substitute their business judgment for that of counsel." *Id.* As set forth below, the facts and circumstances compel the conclusion that the settlement satisfies the standard for approval.

### b.  The Settlement Satisfies the Rule 23 Test for Fairness

#### i.  Rule 23(e)(2)(A): The Class Representative and Class Counsel have Adequately Represented the Class

In evaluating the adequacy of representation, courts consider whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel have vigorously prosecuted the action on behalf of the class. *See In re Samsung Top-load Washing Mach. Mktg., Sales Prac. & Prods. Liab. Litig.*, MDL Case No. 17-ml-2792-D, 2020 WL 2616711, at *3 (W.D. Okla. May 22, 2020). This factor focuses on the "actual performance of counsel acting on behalf of the class." *Montgomery v. Continental*

*Intermodal Group-Trucking, LLC*, No. 19-940 GJF, 2021 WL 1339305, at \*4 (D.N.M. Apr. 9, 2021) (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment).

Here, Class Representative Fowler has the same interests as the rest of the New Mexico Class: they all seek to recover tips they earned but which they allege were unlawfully distributed to Shift Leads in mandatory tip pools. Second, the Class Representative and counsel have vigorously prosecuted this action. Plaintiff Fowler has actively participated in all steps of the litigation, including attending the February 1, 2024, mediation. Elkin Decl., Dkt. 34-1, ¶ 28; *see Cisneros*, 2022 WL 2304146, at \*4 (finding that Named Plaintiff actively participated in the litigation by assisting Class Counsel in investigating claims, responding to discovery, and attending and assisting with the settlement conference). Moreover, Class Counsel at McGillivary Steele Elkin LLP and Youtz & Valdez PC are experienced in handling wage and hour class and collective action cases nationwide. Elkin Decl., Dkt. 34-1, ¶¶ 1-14, 16-17.

For example, Molly A. Elkin has over 30 years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases, including numerous cases brought on behalf of tipped workers, and has served as lead counsel in hundreds of multi-plaintiff court and arbitration cases. *Id.* ¶¶ 2-3. Similarly, the attorneys at Youtz & Valdez PC have considerable experience litigating wage and hour class and collective action cases on behalf of workers in New Mexico and elsewhere. *Id.* ¶¶ 16-17. *See also Cisneros*, 2021 WL 2953117 at \*4 (noting that Class Counsel, including the firm of Youtz & Valdez, "are experienced in handling wage and hour class and collective actions"). Class Counsel have been actively involved in litigating the case since its inception and in resolving this case through mediation. Therefore, the adequacy of representation factor has been met.

### ii.  Rule 23(e)(2)(B): The Settlement was Negotiated at Arms-Length

There is a presumption in favor of a finding that negotiations were fair when they were conducted before a third-party mediator. *See In re Samsung*, 2020 WL 2616711, at *13; *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, No. 09-md-2034, 2018 WL 4252463, at *5 (E.D. Pa. Sept. 5, 2018). Here, the Parties attended a full-day mediation with an third-party mediator experienced in wage and hour class actions. Moreover, at that mediation, they used a damages model built by Plaintiff's expert which was based on class-wide tip and payroll data produced by defendants. *See Key v. Butch's Rate Hole & Anchor Serv., Inc.*, No. CIV 17-1171 RB/KRB, 2022 WL 457915, at *2 (D.N.M. Feb. 15, 2022) (finding that the parties' use of a damage model at mediation indicated that the settlement process was "open, fair and honest"). While the Parties were unable to come to an agreement at the full-day mediation, ultimately, they accepted the mediator's proposal. Elkin Decl., Dkt. 34-1, ¶¶ 19-21. Thus, the settlement was negotiated at arm's length.

### iii.  Rule 23(e)(2)(C)(i)-(iv): The Settlement Provides Adequate Relief

Rule 23(e)(2)(C) sets forth four criteria for assessing the adequacy of relief: (1) "the costs, risks, and delay of trial and appeal;" (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (3) "the terms of any proposed award of attorneys' fees, including timing of payment;" and (4) "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C), (3).

#### 1.  The Relief is Adequate Taking into Account the Costs, Risks, and Delay of Further Litigation

With this factor, the Court weighs the adequacy of the relief against the "the cost and risk involved in pursuing a litigated outcome." *Montgomery*, 2021 WL 1339305, at *5 (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment) (internal quotation marks omitted).

Here, Plaintiffs faced considerable risks in establishing a violation under the New Mexico Minimum Wage Act. The NMMWA states that "[a]ll tips received by [tipped] employees shall be retained by the employee, except that nothing in this section shall prohibit the pooling of tips among wait staff." N.M. Stat. § 50-4-22(C). The NMMWA does not define "wait staff" and the term has not been interpreted or defined in any case law. To prove that the tip pooling constituted a violation under the NMMWA, Plaintiffs would have to first prove that this provision applied to employers who pay their employees the full minimum wage, as Defendants do here, rather than paying the lower tip credit wage. Second, Plaintiffs would have to prove that the term "wait staff" does not apply to the budtenders, or, if it does apply to the budtenders, that it does not apply to the Shift Leads, which would have been difficult given that the Shift Leads often wait on customers with the budtenders. Because none of these issues have been tested in court, Plaintiffs faced a risk in continuing the litigation.

Moreover, Plaintiffs faced a similar risk under the FLSA. Under the FLSA, managers or supervisors are not permitted to keep any portion of the employees' tips. *See* 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.50. Employees are considered supervisors or managers, and thus unable to take tips, when they meet the executive exemption test under 29 C.F.R. § 541.100. 29 C.F.R. § 531.52(b)(2). Plaintiffs faced risk in proving that the Shift Leads met the executive exemption test. For example, Defendants asserted that Shift Leads at many store locations did not supervise two or more full time employees and thus did not meet the criteria in 29 C.F.R. § 541.100(a)(3). Defendants further argued that Shift Leads did not meet the criteria of 29 C.F.R. § 541.100(a)(4) as Shift Leads did not hire or fire or make recommendations regarding changes in employment status that are given particular weight and thus were properly included in the tip pool. Plaintiffs would have had to overcome such defenses to prove that the tip pool was unlawful under

the FLSA. Moreover, given Defendants' assertions of good faith and objective reasonableness with respect to allowing Shift Leads to participate in the tip pool, Plaintiffs may not have been awarded liquidated damages even if they were successful proving their underlying claims under the FLSA.

Without a settlement, the Parties would need to engage in far more extensive discovery, class certification briefing, summary judgment briefing, trial, and potentially an appeal. To continue to litigate this case would come with great costs and great risks, whereas agreeing to a settlement now provides the Settlement Class Members with a substantial portion of their potential relief. Elkin Decl., Dkt. 34-1, ¶¶ 23, 29. Accordingly, the value of a settlement outweighs the costs and risks of further litigation. *See Montgomery*, 2021 WL 1339305, at *6 ("Given that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the class action settlement outweighs the mere possibility of future relief after protracted and expensive litigation.").

### 2.  The Relief is Adequate Taking Into Account the Effectiveness of the Proposed Method of Distribution

The second factor the Court considers in determining whether a proposed settlement provides adequate relief requires the Court to "scrutinize[] the method of claims processing to ensure that it facilitates filing legitimate claims" and consider "whether the claims process is unduly demanding." *Montgomery*, 2021 WL 1339305, at *6 (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment) (internal quotation marks omitted); *Anderson Living Tr. v. Energen Res. Corp.*, CV No. 13-909 WJ/CG, 2021 WL 3076910, at *4 (D.N.M. July 21, 2021). "[T]he claim process should be as simple, straightforward, and nonburdensome as possible." *In re Samsung*, 2020 WL 2616711, at *16.

Here, there is no claims process. Instead, all Settlement Class Members will receive a settlement payment unless they affirmatively opt out. Since no one opted out, this Settlement will

provide significant relief to 249 workers, as the average settlement amount equals roughly two weeks' worth of pay. Accordingly, this distribution process is very simple and straightforward. Class Members simply have to open their mail and deposit their settlement check to be paid. Further, the method of distributing relief to the Class is effective. Payments will be mailed by Rust within 19 calendar days of the settlement's effective date. Agreement, Dkt. 34-2 ¶¶ 3.1.j., 3.1.k., 12.1; *see Chavez Rodriguez v. Hermes Landscaping Inc*., No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. Jun. 18, 2020) (checks distributed by hand and/or mail meet Rule 23 requirements for proper process of claims and efficient distribution of relief).

### 3. The Relief is Adequate Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees

The third criteria for weighing the adequacy of relief requires the Court to consider the "terms of any proposed award of attorney's fees, including the timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Class Counsel seek attorneys' fees based on a percentage of the fund in an amount of $171,049.33, representing one-third of the Settlement Amount net expenses, as well as $11,852.00 of the Settlement Fund as litigation expenses. Elkin Decl., Dkt. 34-1, ¶ 24. Class Counsel's fee of one-third of the Settlement Amount net expenses is well within the range approved by courts in the Tenth Circuit. *See, e.g.*, *In re Thornburg Morg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) (("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (internal quotation marks omitted)); *Shaulis v. Falcon Subsidiary LLC*, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (finding requested award of one-third of common fund for attorneys' fees to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"). As fully set forth in Plaintiffs' Unopposed Petition for Attorneys' Fees and Litigation Expenses, filed

separately, these payments are fair and reasonable, are nearly equal to Plaintiffs' lodestar, and therefore, the relief is adequate taking into account attorneys' fees.

### 4. The Relief is Adequate Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3)

This factor requires scrutiny of any "side agreements" to settle claims of objectors to the settlement agreement. *See In re Samsung*, 2020 WL 2616711, at *18. Here, no side agreements exist. Elkin Decl., Dkt. 34-1, ¶ 31. Where there are no "side agreements," this requirement is satisfied when the parties have filed the Settlement Agreement and their plan for allocating the settlement proceeds with the Court, as the parties have done here. *See Anderson Living Tr.*, 2021 WL 3076910, at *5.

### iv. The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

The final Rule 23(e)(2) factor requires the Court to consider whether the settlement agreement provides for "inequitable treatment of some class members vis-à-vis others." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. Here, all Settlement Class Members have the same claims for unlawfully retained tips, so "settlement shares for each class member will be derived using an identical formula applied to all class members" based on a point system, with points allocated based on weeks worked as budtenders. *See Montgomery,* 2021 WL 1339305*,* at *8; Agreement, Dkt. 34-2, ¶ 11.8. Additionally, for fairness, full-time budtenders, who would have earned more tips because they waited on more customers than their part-time colleagues, will receive double the points per pay period than the part-time budtenders. Agreement, Dkt. 34-2, ¶ 11.8. Similarly, all Settlement Class Members will be subject to the same release. *Id.* ¶ 1.10.

All Settlement Class Members are treated equally with regard to settlement distribution. Indeed, the Notice informed the Settlement Class Members of the distribution methodology and provided them with an opportunity to dispute their number of points. As mentioned above, no

Class Member disputed their allocations. Each Settlement Class Member's settlement amount will be treated as 50% liquidated damages and 50% backpay. *Id.* ¶ 11.8.

Under the NMMWA, upon a liability finding, liquidated damages are mandatory in an amount equal to two times the backpay damages. N.M. Stat. § 50-4-26(C). In contrast, under the FLSA, liquidated damages are available in an amount equal to the backpay damages, 29 U.S.C. § 216(b), and a court can award no liquidated damages upon a finding that the employer acted in good faith, 29 U.S.C. § 260. Accordingly, the New Mexico Rule 23 Class Members and New Mexico Opt-In Plaintiffs had the opportunity, *on their best day in court*, to win liquidated damages equal to two times their backpay, while the Colorado Opt-In Plaintiffs had the opportunity, on their best day, to recover an amount equal to their backpay as liquidated damages. Because this is a settlement, and no one knows which, if any, claims would have been successful, the Class Representative and Class Counsel determined that it made the most sense to use a point system which allocates points based on weeks worked as a budtender to distribute damages, with half of each Settlement Class Member's award treated as backpay and the other half as liquidated damages.

This is especially true here, because absent settlement, establishing a Rule 23 opt-out Class across all R. Greenleaf stores in New Mexico would have been more difficult than establishing conditional certification of an opt-in collective under the FLSA. This is because Rule 23 class certification is assessed under a stricter standard than collective action certification under 29 U.S.C. § 216(b). *See Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1311 (D.N.M. 2017) ("The 'similarly situated' requirement of § 216(b) is also more elastic and less stringent than the requirements found in Rule 23 class action standards."); *In re Bank of Am. Wage and Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012) ("[T]he certification standard under Rule 23 is clearly

much higher than the standard for sending notice pursuant to § 216(b) of the FLSA."). Without a Rule 23 class, there would be no backpay or liquidated damages to New Mexico Class members. Accordingly, even though, *hypothetically*, they could have recovered more in liquidated damages than the Colorado Opt-ins could recover, without Rule 23 class certification, they would recover nothing.

Moreover, arguably, the New Mexico Class has higher hurdles to mount in proving a violation of the NMMWA, *see* Section V(b)(iii)(1), than in proving violations of the FLSA. Defendants' assertions that the New Mexico prohibition on tip pooling applies only to employees who make a direct wage that is less than the minimum wage could have had traction with the court or jury. Specifically, the relevant provision states:

> [T]he employer may consider tips as part of wages, but the tips combined with the employee's cash wage shall not equal less than the minimum wage rate as provided in Subsection A of this section. All tips received *by such employees* shall be retained by the employee, except that nothing in this section shall prohibit the pooling of tips among wait staff.

N.M. Stat. § 50-4-22(6) (emphasis supplied). Defendants assert that the term "such employees" is defined by the preceding sentence, which discusses employees who earn less than the minimum wage as a direct wage. Because the New Mexico Class members earn a direct wage that is equal to or greater than the minimum wage, Defendants have vigorously maintained that the provision limiting tip pooling to only "wait staff" does not apply to the New Mexico class. And to the extent that Defendants are incorrect on this point, and the provision applies to all workers who earn tips regardless of the amount of the direct cash wage paid, Defendants have consistently defended their tip pooling practice by asserting that both Shift Leads and budtenders ***are*** wait staff because they wait on customers just as a bartender or server would. The dearth of definitions and case law regarding the NMMWA made the risk of proving that the tip pool was unlawful in New Mexico

under the NMMWA higher than the risk of proving it was unlawful under the FLSA. Because of this greater risk, treating all Settlement Class Members, including Colorado Opt-in Plaintiffs, the same under the point system distribution method defined in the Settlement Agreement is equitable. Any other division of the Settlement monies would have been arbitrary and speculative.

Additionally, all Settlement Class Members are being treated equally with regard to the applicable statute of limitations. Plaintiffs in New Mexico started receiving tips when recreational sales of marijuana became legalized in New Mexico on April 1, 2022. Therefore, the recovery period for New Mexico Class Members began April 1, 2022. In contrast, the recovery period for Colorado Opt-In Plaintiffs is up to three years under the statute of limitations under the FLSA (i.e., up to three years prior to the filing of their consent forms). Each Settlement Class Member is receiving damages based on their hours worked during the entirety of the possible recovery period, which is longer for Colorado Opt-In Plaintiffs than New Mexico Class Members, and thus, the distribution under the terms of the Agreement is equitable.

The Court should also award a service award of $10,000 to Class Representative Justin Fowler as part of the distribution of the fund. Incentive awards to class representatives in wage and hour litigation are appropriate when they "compensate those individuals for the employment-related risks they bear in bringing forward claims on behalf of a class and for their additional efforts that have benefitted the class." *Cisneros*, 2022 WL 2304146, at *10 (internal quotation marks omitted). Here, Class Representative Justin Fowler, a current employee of Defendants, took on substantial risk in suing his employer. He also spent considerable time assisting counsel in explaining Defendants' tip pooling polices, providing documents supporting Plaintiffs' claims, and taking time off work to participate in mediation. Elkin Decl., Dkt. 34-1, ¶ 28. "The reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding

whether to approve a settlement," *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-MKT, 2018 WL 2183988, at *3 (D Colo. May 11, 2018). Nonetheless, a service award of $10,000 is reasonable and fair. *See, e.g.*, *Montgomery*, 2021 WL 1339305, at *8-9 (approving a service award of $25,000 to named Plaintiff); *In re Universal Service Fund Telephone Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D.N.M. May 12, 2011) (approving $10,000 service award to named plaintiff). Moreover, each Settlement Class Member was notified of the service award and none objected.

### c. The Settlement also Satisfies the Tenth Circuit's *Rutter* Factors

In the Tenth Circuit, courts also consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188. The fourth *Rutter* factor is the only one that does not directly overlap with the Rule 23(e)(2) factors. *See Cisneros*, 2022 WL 2304146, at *11; *In re Samsung*, 2020 WL 2616711, at *18.

### i. The Settlement was Fairly and Honestly Negotiated

For the reasons set forth in Section V(b)(ii), discussing the mediator-assisted arm's-length negotiations, the proposed settlement terms were fairly and honestly negotiated by both Parties. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

### ii. There are Serious Questions of Law and Fact, Placing the Ultimate Outcome of the Litigation in Doubt

As set forth in Sections V(b)(iii)(1) and V(b)(iv), Plaintiffs faced serious hurdles proving their claims under the NMMWA, having to prove that the prohibition on tip pooling provision

applied to Plaintiffs and that the Shift Leads are not wait staff. As discussed in those same sections, under the FLSA, Plaintiffs faced substantial risk in proving that the Shift Leads are managers or supervisors, such that including them in the tip pool is unlawful. Therefore, there are serious questions of law and fact at issue here.

### iii. The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief

The settlement provides "substantial, guaranteed relief" now. *Lucas*, 234 F.R.D. at 694. The alternative would be years-long litigation including prolonged discovery, class certification briefing, summary judgment briefing, trial, and a potential appeal. The value of immediate relief therefore greatly outweighs the possibility of future relief, as described in more detail in Section V(b)(iii)(1).

### iv. The Parties Believe the Settlement is Fair and Reasonable

Under this factor, "the recommendation of a settlement by experienced plaintiffs['] counsel is entitled to great weight." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo. 1997). Here, the parties were represented by experienced counsel who believe that the settlement is reasonable and fair. As explained above, Class Counsel has substantial experience litigating wage and hour class and collective actions. Elkin Decl., Dkt. 34-1, ¶¶ 3, 14-17. Similarly, Defendants have been represented by experienced counsel at Littler Mendelson, P.C. Based on Counsel's professional experience, the Parties believe that the settlement is fair, reasonable, and adequate.

## VI.    CONCLUSION

For the reasons set forth above, and for the reasons set forth in the parties' Joint Motion for Preliminary Approval of FLSA and Class Action Settlement, Dkt. 34, as well as Plaintiff's

contemporaneously filed Unopposed Petition for Attorneys' Fees and Litigation Expenses, the Parties respectfully request that the Court:

(1) Conclude that a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, redistributed tips, or statutory damages exists;

(2) Grant final approval of the Agreement, Dkt. 34-2, as fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out of the Settlement;

(3) Approve the procedure for Defendants to pay the Settlement Amount along with the employer's share of payroll taxes into the QSF as described in Paragraphs 1.7, 10.3, 10.5, 13.2 of the Agreement, Dkt. 34-2;

(4) Approve the Administration of the QSF as described in Paragraphs 10-13 of the Agreement, Dkt. 34-2;

(5) Dismiss the claims of the Named Plaintiff, Opt-In Plaintiffs, and the New Mexico Class Members who have not timely opted out of the Settlement with prejudice, Dkt. 34-2, ¶ 15.1;

(6) Approve an award of attorneys' fees in the amount of $171,049.33 and litigation expenses equaling $11,852.00 as set forth in the Settlement Agreement, Dkt. 34-2, ¶ 9.4, and as supported by Plaintiff's Unopposed Petition for Attorneys' Fees and Litigation Expenses;

(7) Approve the Service Award to Plaintiff Fowler as set forth in the Settlement Agreement, Dkt. 34-2, ¶ 11.5;

(8) Approve payment of settlement administration costs to the Settlement Administrator in an amount not to exceed $9,285.00, as set forth in the Settlement Agreement, Dkt. 34-2, ¶ 11.3;

(9) Certify a class comprising the New Mexico Class as defined in the Parties' Agreement for settlement purposes only pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

(10) Retain jurisdiction over the interpretation and implementation of the Settlement Agreement, Dkt. 34-2, ¶ 16.2.

Dated: July 10, 2024                              Respectfully submitted,

*/s/ Molly A. Elkin*
Molly A. Elkin (*associated pro hac vice*)
Sarah M. Block (*associated pro hac vice*)
Rachel Lerner (*associated pro hac vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
smb@mselaborlaw.com
rbl@mselaborlaw.com


*/s/ Stephen Curtice*
Shane Youtz
Stephen Curtice
James A. Montalbano
Youtz & Valdez PC
900 Gold Ave. SW
Albuquerque, NM 87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com


***Class Counsel***


*/s/ David B. Jordan*
David B. Jordan
*Admitted Pro Hac Vice*
djordan@littler.com

21

LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:     713.951.9400
Facsimile:     713.951.9212

Kimberly Kauffman
*Admitted Pro Hac Vice*
kkauffman@littler.com
Kelli C. Fuqua
kfuqua@littler.com
LITTLER MENDELSON, P.C.
1000 Congress Avenue, Suite 1400
Austin, TX  78701
Telephone:     512.982.7250

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2024, a true and accurate copy of the foregoing document was delivered by electronic notification through the CM/ECF system to all parties of record.

*/s/ Stephen Curtice*
Stephen Curtice