**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
| JUSTIN FOWLER, and all others similarly situated,<br><br>          Plaintiff,<br><br>               v.<br><br>MEDICINE MAN TECHNOLOGIES, INC. d/b/a/ SCHWAZZE, et al.,<br><br>          Defendants. | Civil Action No. 1:23-cv-00640-WJ-SCY |

**UNOPPOSED MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

### I.      Introduction

After significant discovery, including the exchange of class-wide payroll and tip data, and extensive arms-length negotiations, including mediation, Plaintiff and Defendants negotiated a $525,000.00 common fund settlement. From this common fund, Class Counsel seek an attorneys' fee award of 33 1/3% of the fund (after expenses are deducted), equaling $171,049.33, plus $11,852.00 in litigation expenses. Dkt. 34-2 (Settlement Agreement), ¶ 9.4.

The requested fee is consistent with applicable Tenth Circuit authority and with fees awarded in similar cases in this District. Its reasonableness is supported by application of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and although not strictly required, a lodestar cross-check.

Class Counsel have obtained an excellent outcome for the Class. Each Class Member will receive a check without having to file a claim form. Unsurprisingly, the Class Member response has been 100% positive: following a robust notice period, not a single class member opted out of the settlement, none disputed the point allocation, and none objected. Second Declaration of Molly

A. Elkin ("Second Elkin Decl.") ¶ 23; Dkt. 42-2 ("Rust Declaration"), ¶¶ 11-13.  Based on the

foregoing, and as set forth below, the Court should approve Class Counsel's request for attorneys'

fees and litigation expenses.

**ARGUMENT**

**II.      The Court Should Approve Class Counsel's Attorneys' Fee Request**

Courts in the Tenth Circuit utilize two approaches to analyzing a request for attorneys'

fees: the lodestar method and the percentage-of-fund method. *Brown v. Phillips Petroleum Co.*,

838 F.2d 451, 454 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d

849, 853 (10th Cir. 1993). However, "the Tenth Circuit favors the common fund approach, as

opposed to the lodestar method, because a percentage of the common fund is less subjective than

the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited

approach when class counsel is retained on a contingent fee basis, as in this case." *Brown*, 838

F.2d at 484; *see Uselton*, 9 F.3d at 853. In common fund cases, utilizing the percentage method to

calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir.

1994).

"Regardless of which process is used – percentage fee or lodestar method – the court must"

assess the reasonableness of the fee award. *Gonzales v. United States*, No. 00-CV-60 WPJ/RS

ACE, 2006 WL 8444388, at *9 (D.N.M. Mar. 13, 2006); *U.S. Commodity Futures Trading Comm.*

*v. R2 Capital Group, LLC*, No. 14-cv-02182-MSK-KLM, 2017 WL 4350365, at *2 (D. Colo. Jan.

27, 2017). District courts in the Tenth Circuit use the twelve *Johnson* factors to determine whether

attorneys' fees are reasonable as a percentage of a common fund. These factors are:

> 1) the time and labor required, 2) the novelty and difficulty of the question
> presented by the case, 3) the skill requisite to perform the legal service properly, 4)
> the preclusion of other employment by the attorneys due to acceptance of the case,
> 5) the customary fee, 6) whether the fee is fixed or contingent, 7) any time
> limitations imposed by the client or the circumstances, 8) the amount involved and

the results obtained, 9) the experience, reputation and ability of the attorneys, 10) the "undesirability" of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *see also Uselton.*, 9 F.3d at 853) (affirming the relevance of the twelve *Johnson* factors).

The use of the *Johnson* factors in analyzing a percentage-of-fund fee award has been called a "hybrid approach" because it combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017). When applying the hybrid approach, the two methods – lodestar and percentage fee – "complement each other: in a common fund case, the Tenth Circuit favors application of the percentage-of-the-fund method," but "courts have discretion to reduce an award of attorneys' fees if it would be unreasonable under the lodestar approach." *Bailes v. Lineage Logistics, LLC*, No. 15-2457-DDC-TJJ, 2017 WL 4758927, at *3 (D. Kan. Oct. 20, 2017); *see also Charlie v. Rehoboth McKinley Christian Health Servs.*, No. CV 21-652 SCY/KK, 2023 WL 4591167, at *6 (D.N.M. July 18, 2023) (stating that the Tenth Circuit "does not require rigid adherence to either the percentage-of-the-fund or lodestar methods in the common fund context").

In evaluating the reasonableness of a fee award, the court need not specifically address each *Johnson* factor, as some factors may be redundant or inapplicable in certain cases. *In re Crocs Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014).

### a.  Attorneys' Fees are Mandated under the FLSA and NMMWA

Plaintiff prevailed on his claim on his own behalf and on behalf of his co-workers, achieving a common fund settlement of $525,000.00, vindicating 249 employees' rights to retain their earned tips. The Fair Labor Standards Act (the "FLSA") provides that "[t]he court in [an

FLSA] action shall… allow a reasonable attorney's fee to be paid by the defendant, and costs of

the action" where plaintiffs prevail. 29 U.S.C. §216(b). "Whether to award attorney fees pursuant

to violations of the Fair Labor Standards Act is not a matter left to discretion. Payment of attorney

fees and costs to a prevailing party in an FLSA action is mandatory." *Wright v. U-Let-Us Skycap*

*Servs., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986); *see also Weisel v. Singapore Joint Venture,*

*Inc.*, 602 F.2d 1185, 1191 (5th Cir. 1979); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994);

*Beebe v. United States*, 640 F.2d 1283, 1295 (Fed. Cir. 1981) (award of attorney fees to prevailing

party mandatory). Attorneys' fees are also mandatory under the New Mexico Minimum Wage Act.

N.M. Stat. § 50-4-26(E).

### b.  The Fee is Reasonable Under the *Johnson* Factors

#### i.  *Time and Labor Required*

Through July 9, 2024, Class Counsel spent 359.5 hours in bringing this case to a successful

settlement and conclusion. Second Elkin Decl. ¶¶ 5-9, 19. The work performed by Class Counsel

was required to achieve the results obtained. This case required Class Counsel to expend

significant resources and time on case development, legal research, extensive client interaction and

management, hours of data review and analysis, pre-mediation preparation, formal mediation,

settlement agreement drafting, notice and preliminary approval briefing, final approval briefing,

and briefing this fee petition. In sum, the time and labor factor supports the proposed fee award.

#### ii.  *Novelty and Difficulty of the Questions Presented by the Case*

Plaintiff aimed to ensure that all similarly situated budtenders recovered the unpaid tips

they were due, whether they worked in New Mexico or Colorado. As a result, Plaintiff brought

this case as a hybrid 216(b) collective action under the FLSA and concurrently as a Rule 23 class

action. The hybrid approach was intended to maximize the employees affected by Defendant's

alleged violations of federal and state law.

The hybrid nature of the case required research and analysis into questions of the New Mexico Minimum Wage Act and New Mexico common law, as well as requirements regarding tip pooling under the FLSA. As detailed in the Parties' Joint Motion for Final Approval (Dkt. 42), this case involved novel questions under New Mexico law regarding statutory interpretation and application and presented close questions of law under the FLSA. As such, this case presented difficult questions which Class Counsel spent significant time navigating, and in the end, to great success.

### iii.   Skill Requisite to Perform the Legal Service Properly

Class action wage cases "involve a specialized area of the law which is often complex and difficult, where some degree of extra skill is needed to litigate the cases properly." *Farley v. Family Dollar Stores, Inc*., No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014). Class Counsel at McGillivary Steele Elkin LLP and Youtz & Valdez P.C. are experienced in handling wage and hour class and collective action litigation. Dkt. 34-1, Elkin Decl. ¶¶ 1-14, 16-17. For example, Molly A. Elkin has over 30 years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases, including numerous cases brought on behalf of tipped workers, and has served as lead counsel in hundreds of multi-plaintiff court and arbitration cases. *Id*. ¶¶ 2-3. Similarly, the attorneys at Youtz & Valdez PC have considerable experience litigating wage and hour class and collective action cases on behalf of workers in New Mexico and elsewhere. *Id*. ¶¶ 16-17. Therefore, Class Counsel had the requisite skill to perform the legal service required in this litigation.

### iv.   Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

Class Counsel spent more than 359 hours of time on this case that could have been spent on other worthwhile cases. Courts in the Tenth Circuit have recognized the inherent preclusion of other work implicit in acceptance of a large class action case:

> Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages. There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts. This case involved workers who were neither highly skilled nor highly paid, making a contingent fee arrangement even more risky.

*Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013); *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) ("It is fair to assume… that lead counsel's efforts on this case could have been devoted to other cases which may have proven worthwhile."). Here, Class Counsel spent significant hours on this case, remuneration for which was entirely contingent on the outcome of the matter. Second Elkin Decl. ¶ 14.

### v. Customary Fee

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the fund. *Peterson v. Mortgage Sources, Corp.*, CIV.A. 08- 2660-KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011) (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir.1995) and *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir.1994)).

The one-third percentage of the fund request here falls well within the range that is regularly approved by courts in the Tenth Circuit. *See, e.g.*, *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1264 (10th Cir. 2023) (affirming that a 33% fee award falls within the range of fee percentages awarded in the Tenth Circuit); *Whittington*, 2013 WL 6022972, at *2 ("Together the

fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at \*19 (D.N.M. Jan. 31, 2011) (collecting cases noting fee awards between 25-40% of the amount recovered); *Lowery v. City of Albuquerque*, No. CIV 090457 JB/WDS, 2013 WL 1010384, at \*44 (D.N.M. Feb. 27, 2013) (awarding "thirty-percent of the settlement fund in attorneys' fees"); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at \*2 (W.D. Okla. June 8, 1993) (finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit"). Here, the 33 1/3% award is well within the range of customary fee awards in similar cases.

### vi.   *Whether the Fee is Fixed or Contingent*

Class Counsel took this case on a contingency basis. Second Elkin Decl. ¶ 14. A contingent fee arrangement often weighs in favor of a greater fee because "[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices." *In re Crocs Inc. Sec. Litig.*, 2014 WL 4670886, at \*4 (quoting *In re Thornburg Mortg. Inc. Sec. Litig.*, 912 F.Supp.2d 1178, 1256 (D.N.M. 2012)). Despite having made significant investments of time and out-of-pocket expenses throughout this litigation, Class Counsel have received no compensation for this case. Indeed, they have faced a significant risk of nonpayment because they undertook this litigation on a contingent basis, bearing the risk of no recovery after spending a year in prosecuting this case. *See Farley*, 2014 WL 5488897, at \*4 (representation on a contingency fee basis weighed in favor of the requested fee award). The risk that Class Counsel would recover no compensation for their extensive efforts was not merely hypothetical, as Plaintiffs faced multiple challenges in proving that the tip pool was unlawful under federal and state law.

### vii.   *Time Limitations Imposed by Client or Circumstances*

Because this case proceeded through a normal course of pleading, significant discovery, settlement negotiations and mediation without time limitations imposed by Plaintiffs or the circumstances, Class Counsel believes that this factor is not relevant to the instant case. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151.

### *viii.   Amount Involved and Results Obtained*

The most critical *Johnson* factor in determining the reasonableness of a fee award is the degree of success obtained. *In re Crocs Inc. Sec. Litig.*, 2014 WL 4670886, at *4 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Where the recovery was highly contingent and efforts of counsel were instrumental in realizing recovery on behalf of the class, this factor should be given even greater weight. *In re Qwest Comm. Int., Inc. Sec. Litig.*, 625 F.Supp.2d at 1151.

The $525,000.00 common fund represents a significant recovery on behalf of the Class. This is especially true considering that neither class nor collective action certification had been granted at the time the settlement was reached. For example, if Plaintiff had prevailed on his anticipated motion for conditional certification under 29 U.S.C. § 216(b), but Defendant defeated Plaintiff's anticipated motion for Rule 23 certification, this case would have only proceeded on behalf of the Named Plaintiff, 19 opt-in Plaintiffs and a small percentage of collective members who would have elected to affirmatively opt into the case. Here, **all** affected members will receive compensation. The average payout to a Class Member (after all fees, expenses, administration costs, and the service award are paid) is $1,296.44, with the highest settlement award being $3,758.17. Second Elkin Decl. ¶ 25. This is a significant recovery for 249 low-wage workers.

As discussed in more detail in the Parties' Joint Motion for Final Approval (Dkt. 42), the outcome of this litigation was in doubt considering the various legal hurdles Plaintiff faced in proving the tip pool was unlawful. The $525,000.00 represents approximately 32% of the best day value of Plaintiffs' claims (i.e., 32% of the value of the total amount of tips earned by shift leads

during the recovery period, plus liquidated damages equal to twice that amount). Dkt. 34-1, Elkin Decl. ¶ 29. This is an excellent outcome considering the risks of the litigation. *See Voulgaris*, 60 F.4th at 1264 (affirming that recovering 25% to 35% of the total possible damages is an "above-average result[]"). Defendants' victory on any one issue would have potentially eliminated all damages. It is also worth noting that the settlement results were obtained swiftly. The relatively short timeline from filing suit to settlement reflects the experience, ability and work expended by Class Counsel. This settlement should be viewed as very favorable to Plaintiff and the Class and this factor weighs in favor of approval of the requested attorneys' fees.

### ix. *Experience, Reputation, and Ability of the Attorneys*

As detailed in Section II(c)(iii), Class Counsel are highly experienced in litigating class and collective cases, with a specific focus in wage and hour cases under the FLSA and state law. Class Counsel are highly skilled and experienced. Therefore, this factor supports Plaintiffs' application.

### x. *Undesirability of the Case*

Class Counsel would not describe a case they chose to prosecute as undesirable. Given that the Class Members, low-wage workers making roughly $15-$17 an hour, did not have high damages on an individual basis, and did not have the means to hire counsel on an hourly fee basis, this case could have only been litigated on a contingency fee agreement. Because of the contingency fee agreement, Class Counsel is only compensated if the case is resolved successfully, and therefore are not compensated for every hour of work performed. This, coupled with the significant time and resources required to pursue this case made the case undesirable to other counsel not prepared to take on such a risky commitment without a retainer or fixed fee. Thus, the "undesirability" factor supports the requested fee award.

#### xi.   Nature and Length of the Professional Relationship with the Client

"In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. at 1153. Here, Class Counsel did not have a professional relationship with Plaintiff, opt-in Plaintiffs, or any Class member prior to the instant litigation and do not anticipate any further professional relationship with them after the conclusion of this matter. Nonetheless, the fact that not a single Class Member has objected to any part of the settlement, including the proposed attorneys' fees and litigation expenses, weighs in favor of the requested fee award.

#### xii.   Awards in Similar Cases

Courts have held that "the customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015); *see also Voulgaris*, 60 F.4th at 1264 (affirming that a 33% fee award falls within the range of fee percentages awarded in the Tenth Circuit); *Robles*, 2011 WL 9717448, at *19 (collecting cases noting fee awards between 25-40% of the amount recovered); *Lowery v. City of Albuquerque*, No. CIV 090457 JB/WDS, 2013 WL 1010384, at *44 (D.N.M. Feb. 27, 2013) (awarding "thirty-percent of the settlement fund in attorneys' fees"); *Uselton*, 9 F.3d at 843 (10th Cir. 1993) (affirming an award of attorneys' fees of 29% of the common fund); *Shaw*, 2015 WL 1867861, at *6 (awarding as attorneys' fees one-third of a $6 million common fund, and noting that "[t]his is well within the percentage range approved in similar cases"); *McNeely v. Nat'l Mobile Health Care*, LLC, No. CIV–7–933–M, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) (approving fees equal to 33% of the total settlement); *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) (in FLSA and NMMWA case, holding

attorneys' fee award of "33.33% of the gross recovery is reasonable and in line with similar awards"). Here, the $171,049.33 Class Counsel seeks in attorneys' fees represents 33 1/3% of the total settlement amount (after the litigations expenses are deducted), which is well within the generally approved range of similar cases.

Therefore, the *Johnson* factors weigh in favor of this Court approving Class Counsel's requested attorneys' fees.

### c.  LODESTAR CROSSCHECK

The Tenth Circuit does not require a lodestar crosscheck, but some courts, including this one, evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount. *See, e.g.*, *Anderson Living Tr. v. Energen Res. Corp.*, No. 13-909 WJ/CG, 2021 WL 3076910, at *7 (D.N.M. July 21, 2021); *Shaw*, 2015 WL 1867861, at *8; *In re Crocs Inc. Sec. Litig.*, 2014 WL 4670886, at *4.

To calculate the lodestar in this case, Class Counsel used the following rates: $550 an hour for senior partners, $500 an hour for junior partners, $400 for associates, and $175 for paralegals. Second Elkin Decl. ¶ 4. These rates are reasonable given the circumstances of the case and the experience of Class Counsel. *See Shaw*, 2015 WL 1867861, at *8 (approving billing rates for staff and attorneys ranging from $150 to $675 per hour); *Anderson v. Merit Energy Co.*, Civil No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) (finding that $700/hour for a lead attorney with 31 years of experience and $400/hour for an associate is reasonable); *Prim v. Ensign U.S. Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2019 WL 4751788, at *7 (D. Colo. Sept. 30, 2019) (approving hourly rates of $650 for attorneys with 18 to 22 years' experience); *see also Bennett v. Kijakazi*, Civ. No. 21-939 SCY, 2023 WL 7114595, at *2 (D.N.M. Oct. 27, 2023) (awarding $600 per hour for attorney time in a social security benefits case).

Based on the foregoing rates, the total lodestar attorneys' fees chargeable to Class Counsel through July 9, 2024, equals $172,191.10. Second Elkin Decl. ¶ 22. Thus, Class Counsel's requested fee of $171,049.33, equaling 1/3 of the common fund (net expenses), results in a fee that is less than their lodestar.[1] Even if the Court were to apply lower rates, for example, the rates it applied in *Charlie v. Rehoboth McKinley Christian Health Servs.*, No. CV 21-652 SCY/KK, the total fees through July 9, 2024, would be $127,981.25, and the multiplier would be only 1.34, which is well within the range of multipliers approved by courts in this Circuit. *See, e.g.*, *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620725, at *7 (D. Colo. Dec. 18, 2018) ("Even if the rate is slightly higher than the rates customarily charged in the area, the 1.15 multiplier is lower than the lodestar multipliers that have been approved in other class actions in this District."); *Shaw*, 2015 WL 1867861, at *8 (lodestar multiplier of 1.37 to be significantly lower than lodestar multipliers that other courts have consistently approved in other class action cases); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57); *Mishkin v. Zynex, Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6); *Lucas v. Kmart Corp.*, Civil Action No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *9 (D. Colo. July 27, 2006) (lodestar multiplier of 1.87 in the cross-check analysis was reasonable).

The lodestar crosscheck in this case confirms that the $171,049.33 amount Class Counsel seeks in attorneys' fees is reasonable.

### III.    Class Counsel's Litigation Expenses Are Reasonable and Benefitted the Class

---

[1] Detailed listings of Class Counsel's hours are set forth in Exhibits B and C to the Second Elkin Declaration.

Pursuant to the Settlement, Class Counsel seeks $11,852.00 in litigation expenses. These expenses are also reasonable and should be approved. "As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000); *see also Abraham v. BP Am. Prod. Co.*, No. CIV-09-961 WDS/KMB, 2013 WL 12045197, at *2 (D.N.M. Mar. 20, 2013) ("Class Counsel are entitled to an award to reimburse their reasonable and necessary expenses associated with the prosecution and successful resolution of the litigation.").

To date, Class Counsel have incurred approximately $14,532.39 in litigation expenses. Second Elkin Decl. ¶¶ 15, 21. The expenses, including the costs of data analysis and mediator fees, were all incurred in connection with the prosecution of the action and the execution of the settlement, and thus, are reasonable and proper. All of the litigation expenses were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class. No Class Member has objected to the request for reimbursement of litigation expenses. Because Class Counsel only requests $11,852.00 in litigation expenses, which is less than actually incurred, the litigation expenses[2] are reasonable and should be approved by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order approving Class Counsel's attorneys' fees in the amount of $171,049.33 and $11,852.00 for reimbursement of Class Counsel's litigation expenses.  A proposed Order is attached as Exhibit A

---

[2] A listing of the litigation expenses incurred are set forth in Exhibit D to the Second Elkin Declaration.

to the Parties' Joint Motion for Final Approval of Settlement and Stipulation of Dismissal filed contemporaneously.

Dated: July 10, 2024                         Respectfully submitted,

                                             */s/ Stephen Curtice*
                                             Shane Youtz
                                             Stephen Curtice
                                             James A. Montalbano
                                             Youtz & Valdez PC
                                             900 Gold Ave. SW
                                             Albuquerque, NM 87102
                                             Telephone: (505) 244-1200
                                             shane@youtzvaldez.com
                                             stephen@youtzvaldez.com
                                             james@youtzvaldez.com

                                             */s/ Molly A. Elkin*
                                             Molly A. Elkin (*associated pro hac vice*)
                                             Sarah M. Block (*associated pro hac vice*)
                                             Rachel Lerner (*associated pro hac vice*)
                                             McGILLIVARY STEELE ELKIN LLP
                                             1101 Vermont Ave., NW
                                             Suite 1000
                                             Washington, DC 20005
                                             Telephone: (202) 833-8855
                                             Fax: (202) 452-1090
                                             mae@mselaborlaw.com
                                             smb@mselaborlaw.com
                                             rbl@mselaborlaw.com

                                             *Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, a true and accurate copy of the foregoing document was delivered by electronic notification through the CM/ECF system to all parties of record.

                                             */s/ Stephen Curtice*
                                             Stephen Curtice